# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDU-SCIENCE (USA), INC., <br><br> Plaintiff, <br> v. <br><br> INTUBRITE, LLC, <br><br> Defendant. | Case No. 12cv01078 BTM (WMC) <br><br> **ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS** |
| INTUBRITE, LLC, <br><br> Counterclaimant, <br> v. <br><br> EDU-SCIENCE (USA), INC.; and EDU-SCIENCE (HK) LTD., <br><br> Counterdefendants. | |

This case was transferred from the Eastern District of California on May 2, 2012 (see ECF No. 16). On September 28, 2013, Defendant IntuBrite, LLC ("IntuBrite") filed a motion for judgment on the pleadings (ECF No. 28). For the reasons below, the motion is hereby **DENIED**.

//
//
//
//

## I. BACKGROUND

On February 16, 2012, Edu-Science (USA), Inc. ("EDU-USA") brought this action against IntuBrite for breach of contract (ECF No. 2). The Court must accept all factual allegations in the Complaint as true for the purposes of this motion.

IntuBrite contacted EDU-USA around early 2009 for a price quotation on stylettes, which are used in tracheal intubation to open someone's airway. EDU-USA gave IntuBrite a quotation on May 11, 2009. On July 17, 2009, IntuBrite issued a purchase order in the amount of $134,000 for three different sizes of stylettes, plus $6,000 for tooling costs. The parties later agreed to eliminate some of the stylettes ordered, and EDU-USA ultimately manufactured $128,000 in stylettes.

In the purchase order, see Compl., Ex. B, it states that product releases are to be determined ("TBD"), which appears to refer to when the product would be shipped. According to the Complaint, EDU-USA was shipping the stylettes in accordance with IntuBrite's product releases, and completed manufacturing the stylettes by early 2010. However, EDU-USA only shipped $13,945.60 in stylettes before IntuBrite stopped issuing product releases. EDU-USA issued a new invoice for the balance of $114,054.40 on September, which has not been paid.

In addition to the stylettes, IntuBrite had also contacted EDU-USA for a price quotation for laryngoscopes with pouches in late 2008 or early 2009. EDU-USA gave IntuBrite a quotation on August 19, 2009, which included tooling costs to be amortized with purchases over time. The quotation also required that EDU-USA have the "[e]xclusive product supply right" until August 14, 2012. See Compl., Ex. D at 2.

On September 10, 2009, IntuBrite issued four purchase orders for the laryngoscopes: 1) purchase order 0001000 for $51,980.00; 2) purchase order 0001001 for $212,476.52; 3) purchase order 0001002 for $271,403.32; and 4) purchase order 0001004 for $531.180.86, for a total of $1,066,950.70. While each purchase order includes a delivery date, see Compl., Ex. E-H, EDU-USA alleges that "[t]he delivery date could not be confirmed at that time as Defendant Intubrite was still developing the

specifications for the laryngoscopes. . . ." Compl. ¶ 12. According to EDU-USA, it accepted all four purchase orders as the Original Equipment Manufacturer ("OEM"), see id., although this does not appear to be reflected on the quotation or purchase orders themselves.

EDU-USA shipped $162,610.24 in laryngoscopes to IntuBrite before IntuBrite ordered the shipments be stopped. However, EDU-USA had already manufactured additional laryngoscopes for IntuBrite, which are currently being held in inventory in China. EDU-USA alleges that IntuBrite stopped buying the laryngoscopes from EDU-USA because it found a cheaper supplier in Pakistan. In any event, EDU-USA had bought capital equipment worth approximately $200,000 to produce the laryngoscopes, which it alleges that it cannot use for any other purpose.

EDU-USA further alleges that IntuBrite "never attempted to terminate the exclusive purchase agreement for [the laryngoscopes], but rather ordered the shipping stopped and ceased paying. . . ." Compl. ¶ 15. According to EDU-USA, when IntuBrite ordered the shipping stopped, there was already a shipment en route that had to be re-routed to a warehouse in Los Angeles, and other items were in various stages of production. IntuBrite ceased all payments in May 2011.

## II. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss. Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

## III. DISCUSSION

Defendant IntuBrite moves for judgment on the pleadings on the grounds that EDU-USA lacks standing and, in the alternative, that it has failed to state a cause of action.

### A. Whether EDU-USA Has Standing

IntuBrite's first argument is that EDU-USA lacks standing to bring this action because the contracts for the stylettes and laryngoscopes are between IntuBrite and EDU-HK, not EDU-USA. This argument is based on the fact that the price quotations state toward the bottom, "For and on behalf of Edu-Science (H.K.) Ltd." See Compl., Ex. A & D.

The Court finds this argument unpersuasive. First, while the price quotations do contain that statement, they are on EDU-USA's letterhead. More importantly, all the negotiations and arrangements were made between IntuBrite and EDU-USA: IntuBrite contacted EDU-USA for the quotations, EDU-USA gave them the quotations, IntuBrite sent the purchase orders to EDU-USA, with EDU-USA noted as the vendor on all of the purchase orders, see Compl., Ex. B & E-H, and EDU-USA shipped the products and issued the invoices for IntuBrite's outstanding balance. Therefore, the Court holds that EDU-USA has standing to bring this suit.[1]

### B. Whether EDU-USA Has Stated a Cause of Action

IntuBrite's second argument is that EDU-USA failed to plead facts sufficient to state a breach of contract claim against IntuBrite. To prove a breach of contract under California law, the plaintiff must show: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) damages to plaintiff as a result of the breach. Conder v. Home Sav. of Am., 680 F.

---

[1] There is some argument in the papers as to whether the price quotation or purchase order constitutes the offer, but the Court finds it unnecessary to reach that issue at this time.

Supp. 2d 1168, 1174 (C.D. Cal. 2010).

With regard to the contract for stylettes, IntuBrite argues that EDU-USA has not stated a cause of action for breach of contract because EDU-USA "fail[ed] to show how IntuBrite's actions constitute a breach." D's Mot. for Entry of Judgment on Pleadings (ECF No. 28-1) at 7. According to the purchase order, 50% of the purchase price was "Due at Approval of Drawings, Tolerances, Material Certifications, and color samples" and the balance was "Due upon Approval of 1st Article," Compl., Ex. B, and EDU-USA did not allege any facts showing that either approval took place. Without those approvals, IntuBrite argues, EDU-USA has not shown that IntuBrite owed EDU-USA any payments under the purchase order and therefore has not alleged a breach of contract.

As to the contract for the laryngoscopes, IntuBrite argues that EDU-USA cannot show that EDU-USA performed its duties under the contract – as required by the second element for a breach of contract – because it "fail[ed] to plead that it met the strict delivery deadlines" in the purchase orders. Id. at 8. While EDU-USA alleged in the Complaint that it produced and shipped the laryngoscopes in accordance with the purchase orders "as revised between the parties," Compl. ¶11, IntuBrite argues that the reference to revisions is wholly conclusory and inadequately pled to overcome the stark delivery dates in the purchase orders.

However, as the moving party, the burden is on IntuBrite to show that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. The parties' course of conduct or prior course of dealing could easily account for the discrepancy between the contracts as written and the performance thereof, and IntuBrite has not alleged any facts that demonstrate otherwise. The Court is also mindful that under Federal Rule of Civil Procedure 8, only a "short and plain statement of the claim" is needed, Fed. R. Civ. P. 8(a)(2), as long as factual allegations are "enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). The Court holds that EDU-USA has met this

standard. EDU-USA has alleged the existence of contracts with IntuBrite, that it was fulfilling its duties under the contracts, that IntuBrite breached the contracts by, *inter alia*, refusing to pay for goods it had already ordered, and that EDU-USA suffered damages as a result, including the lost profits and buying capital equipment that cannot be used for anything else. Therefore, IntuBrite's motion for judgment on the pleadings is **DENIED**.

## IV. <u>CONCLUSION</u>

For the reasons above, IntuBrite's motion for judgment on the pleadings (ECF No. 28) is hereby **DENIED**.

**IT IS SO ORDERED.**

DATED: July 9, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court