# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDU-SCIENCE (USA) INC., <br><br> Plaintiff, <br><br>            Plaintiff, <br><br> v. <br><br> INTUBRITE LLC, <br><br>            Defendant. <br> Defendant. | Case No. 12-cv-1078 BAS (JLB) <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DANA A. BASNEY** <br><br> **[ECF 129]** |
| AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS | |

Before the Court is Plaintiff Edu-Science (USA) Inc. ("Edu-USA") and Cross-Defendant Edu-Science (HK) Ltd. ("Edu-HK") (collectively, "Edu-Science") motion to exclude the expert testimony of Dana A. Basney. ECF 129. Defendant and Counter-Claimant IntuBrite LLC's ("IntuBrite") opposed the motion. ECF 135. Edu-Science replied. ECF 139.

On June 22, 2015, the Court heard oral argument on the motion. For the

following reasons, the Court **DENIES** Edu-Science's motion to exclude Basney's testimony. ECF 129.

### I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859 (9th Cir. 2014). Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if":

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, expert testimony must be both relevant and reliable. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 462 (9th Cir. 2014). Relevancy simply requires that "[t]he evidence . . . logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Reliability requires that an expert's testimony "have a reliable basis in the knowledge and experience of his discipline." *Estate of Barabin*, 740 F.3d at 462 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999)).

The courts are not concerned with the "correctness of the expert's conclusions but the soundness of his [or her] methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (A court is not required "to admit or to exclude evidence based on its persuasiveness;" but rather "to admit or exclude evidence based on its

1  scientific reliability and relevance."). "For scientific opinion, the court must assess
2  the reasoning or methodology, using as appropriate such criteria as testability,
3  publication in peer reviewed literature, and general acceptance, but the inquiry is a
4  flexible one." *Primiano*, 598 F.3d at 564. "Shaky but admissible evidence is to be
5  attacked by cross examination, contrary evidence, and attention to the burden of
6  proof, not exclusion." *Id.*; *see also Daubert v. Merrell Dow Pharmaceuticals. Inc.*,
7  509 U.S. 579, 595-96 (1993).

8        The duty falls upon the district court to act "in a gatekeeping role, to assess
9  whether the reasoning or methodology underlying the testimony is valid and whether
10 that reasoning or methodology properly can be applied to the facts in issue." *Ollier*,
11 768 F.3d at 860 (quoting *Daubert*, 509 U.S. at 592-93) (internal quotation marks
12 omitted); *see also Ellis*, 657 F.3d at 982 ("[T]he trial court must act as a "gatekeeper"
13 to exclude junk science that does not meet Federal Rule of Evidence 702's reliability
14 standards by making a preliminary determination that the expert's testimony is
15 reliable."). The party seeking to offer the testimony bears the burden of establishing
16 its admissibility. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 549 (C.D. Cal. 2014)
17 (citations omitted).

18     **II.   DISCUSSION**

19       Edu-Science have challenged Dana A. Basney's expert testimony regarding
20 the damages IntuBrite reportedly sustained based upon inaccuracies in his Expert
21 Report. Basney Report, ECF 129-3. First, they challenge his methodology of
22 employing a Microsoft Excel trendline to extrapolate lost sales and damages because
23 they claim it is contraindicated as inaccurate by Microsoft's own Excel
24 documentation. Second, they argue that IntuBrite continued to sell Edu-Science
25 goods after May 2011. Basney's analysis assumes that in May 2011 IntuBrite had
26 exhausted its Edu-Science inventory. Third, they argue that Basney did not consider
27 alternative causes of IntuBrite's sales reductions, such as IntuBrite's start-up
28 company status or increasing market competition. All of these challenges target the

reliability of the methodology applied by Basney, under Federal Rule of Evidence 702(c) and (d).

On the first point, Edu-Science argue that the trendline analysis performed automatically in Microsoft Excel is inaccurate for any chart other than an "xy scatterplot" because y-values are not taken into account in other graphs. To support this contention, Edu-Science cite to Microsoft's Support Article ID: 211967, available online and attached to their Motion. ECF 129-5.  This article refers to trendline formulas that are inaccurate because they are rounded, but it does not suggest that the trendline graphic generated by the program is inaccurate. After reviewing other Microsoft Support articles, it is clear that Microsoft built in properly-functioning trendlines for bar graphs.[1] Additionally, Article 211967 states that the trendline *formula* "will be inaccurate if displayed on a [bar chart]" "because [t]he X axis is plotted only as a linear series in these chart types, regardless of what the labels actually are." The graphs in question here are monthly sales figures, each bar corresponding to a single month's sales. As such, the x axis is regular and represents consistent units of time, as in an xy scatterplot. Even if many bar graphs would be affected by this error, it is unclear that Basney's are affected. In such a circumstance, Edu-Science may cross-examine Basney on his trendlines, but his methodology is not "junk science" that requires this Court to exercise its gatekeeper duties.

Second, Edu-Science argue that IntuBrite continued to sell Edu-Science goods after May 2011; Basney's Report assumes they had exhausted all Edu-Science goods at that time. This underlying fact is still in dispute, with IntuBrite arguing that while new shipments ceased in May 2011, simply subtracting sold goods from delivered goods does not take into account quality control procedures required before the

---

[1] *See Add, Change, or Remove a Trendline in a Chart*, MICROSOFT, https://support.office.com/en-sg/article/Add-change-or-remove-a-trendline-in-a-chart-072d130b-c60c-4458-9391-3c6e4b5c5812.

goods could be circulated or defective goods that could not be sold, among other discrepancies. Basney's determination that Edu-Science goods were effectively out of circulation after May 2011 may be based on what Edu-Science contend is an inferior assumption. Nevertheless, that assumption is sufficiently reliable as the basis for expert opinion for purposes of admissibility. IntuBrite may still point to alternative theories or impeaching evidence at trial to undermine this assumption.[2]

Similarly, Edu-Science's third argument argues that Basney faultily assumed that factors outside of Edu-Science's cessation of delivery did not influence IntuBrite's sales figures. Edu-Science cite to *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988), which involved an expert witness who impermissibly extrapolated a compound growth factor based on a misleadingly simplistic analysis of prior sales. In *McGlinchy*, the Ninth Circuit held that the district court properly excluded the testimony. In response, IntuBrite argues that "before and after" is a routine method of damage calculation, citing *D&R Distributing Co. v. Chambers Corp.* (C.D. Cal. 1984).

The expert in *McGlinchy* relied on demonstrably false assumptions to arrive at speculative lost profits calculations resulting from Shell Oil's breach of contract. For example, he claimed to account for "experience plus inflation" to arrive at the expenses to subtract from his expected gross profits calculation, but mystifyingly assumed no increase in expenses over a nine year period. McGlinchy, 845 F.2d at 807. Further, "he documented little of the basis for his conclusions." *Id.*

Here, even though Basney's Report relies on a scant few pillars to support its conclusions, those pillars are well-documented and reliable. This reliability and documentation significantly reduces the possibility of misleading or confusing the jury, especially when compared to the convoluted obfuscation of the expert in

---

[2] IntuBrite raised new theories at oral argument to support beginning the cut-off at the time of breach. IntuBrite is cautioned that only those assumptions an expert *actually relied on* are relevant to support the reliability of the expert's opinion.

1  *McGlinchy*. While Basney's spartan approach may reduce the weight of his
2  testimony and prove fertile grounds for cross-examination, it is not misleading.
3        Accordingly, the Court need not exercise its gatekeeping duty to exclude
4  Basney's Report. The Court **DENIES** the motion.
5        **IT IS SO ORDERED.**
6  Dated: July 1, 2015

Hon. Cynthia Bashant
United States District Judge